UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| **TONY TANKERSLEY,** | **CIVIL ACTION NO. 6:22-86-KKC** |
| **Plaintiff,** | |
| v. | **OPINION AND ORDER** |
| **KILOLO KIJAKAZI,** **ACTING COMMISSIONER OF THE** **SOCIAL SECURITY** **ADMINISTRATION,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the parties' cross-motions for summary judgment. (DE 13, 15.) Plaintiff Tony Tankersley brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the denial of his claim for disability insurance. The Court, having reviewed the record, will grant Tankersley's motion, deny the Acting Commissioner's motion, and reverse and remand the Acting Commissioner's decision.

**I. Analysis**

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (citation and quotation marks omitted). To determine whether a claimant has a compensable disability under the Social Security Act (the "Act"), the ALJ applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps are:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." § 404.1520(a)(4). In the first four steps of the process, the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (citation and quotation marks omitted); *see also* § 404.1520(g)(1).

In denying Tankersley's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Act. § 404.1520(a); *see, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Tankersley has not engaged in substantial gainful activity since June 15, 2011. (Administrative Record ("AR") at 17.)

At step two, the ALJ determined that Tankersley suffers from the medically determinable impairments of degenerative disc disease, chronic obstructive pulmonary disease (COPD), and migraine headaches. *Id.* The ALJ then found that Tankersley does not have a severe impairment or combination of impairments because they do not significantly limit (or expects to significantly limit) his ability to perform basic work-related functions for twelve (12) consecutive months. *Id.* Because of this finding, the ALJ concluded that Tankersley was not disabled as defined under the Act and not entitled to disability insurance benefits. *Id.* at 16.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council subsequently denied Tankersley's request for review. *See* 20 C.F.R. § 422.210(a). Tankersley therefore has exhausted his administrative remedies and filed an appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

Tankersley raises three different arguments to argue that the ALJ erred in finding that he was not disabled: (1) the ALJ fail[ed] to apply the principles of *Drummond* and *Dennard* in his analysis; (2) the ALJ's RFC determination that Tankersley does not have a severe medically determinable impairment was erroneous; and (3) Tankersley is disabled based on the application of the Medical-Vocational Guidelines. (DE 13 at 1-2.)

**A.      The ALJ did not fail to apply the principles of *Drummond* and *Dennard*.**

Tankersley first argues that the ALJ "gave no consideration to the prior ALJ's assessment of additional medically determinable impairments at Step 2" and states that "the current ALK was bound to acknowledge these impairments [found by the prior ALJ] and consider whether any new and material evidence exists which would justify [a] change in severity." *Id.* at 6. Tankersley bases this argument on the Sixth Circuit's opinions in

3

*Drummond* and *Dennard*, which held that a subsequent ALJ is "generally bound by the findings made by a previous ALJ at each step of the sequential evaluation process, unless there is new and material evidence or a showing of 'changed' circumstances' which would justify a departure . . . ." *Id.* (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990)). The Sixth Circuit, however, did not intend for these cases to rigidly bind an ALJ to a prior ALJ's findings in the same factual dispute.

The defendant correctly points to *Earley v. Commissioner of Social Security*, where the Sixth Circuit clarified the principles established in *Drummond* and *Dennard*. It established that ALJs are not strictly bound to social security determinations made by prior ALJs. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932 (6th Cir. 2018) ("An individual may file a second application . . . for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold."). Tankersley argues that since a prior ALJ "found [Tankersley] had medically determinable impairments including history of left wrist and right femur fracture; mild degenerative changes of the cervical, thoracic, and lumbar spine; and depression," the more recent ALJ erred in not considering these findings in the subsequent opinion. (DE 13 at 6.) This position conflicts with the Sixth Circuit's guidance in *Earley*, where it clarified that a first ALJ's findings "are a legitimate, **albeit not binding**, consideration in reviewing a second application." 893 F.3d at 933 (emphasis added). The Sixth Circuit specifies that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits . . . the Commissioner is bound by this determination absent changed circumstances." *Id.* at 932 (quoting *Drummond*, 126 F.3d at 842). While Tankersley argues that the most recent ALJ erred to consider certain findings of the prior ALJ, he ignores the

4

fact that the prior ALJ ultimately found that Tankersley was not entitled to social security benefits because none of his medically determinable impairments were severe—the same final decision made by the most recent ALJ. (DE 15 at 4; DE 9-1 at 52.) Accordingly, the ALJ did not violate the principles of *Drummond* and *Dennard*.

**B.      The ALJ did not apply the wrong standard to establish physical or mental impairments in her denial of social security benefits.**

Tankersley first argues that the ALJ "premise[d] her findings largely on the basis of inapplicable authority," which should force the Court to reverse and remand. (DE 13 at 6-7.) The ALJ, Tankersley alleges, committed reversible error when she mentioned "rescinded and/or superseded" authority when reciting the standard for establishing a medically determinable impairment at step two of the social security evaluation. (*Id.* at 7.) This is not the case. Although the ALJ cited to outdated authority in her 2021 decision, she did not apply "the wrong standards" to her decision as Tankersley claims she did when she asserted that "[t]here must be evidence from an 'acceptable medical source' in order to establish the existence of a medically determinable impairment . . . ." (AR at 14.) This is not, contrary to Tankersley's claim, a misstatement of law.

Current social security regulations establish that "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. "We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.* The Court fails to see how this standard differs from the standard applied in the ALJ's 2021 decision, even if she cited outdated authority. (*See* AR at 14 ("A medically determinable impairment may not be established solely on the basis of the claimant's allegations regarding symptoms. There must be evidence from an 'acceptable medical source' in order to establish the existence of a medically determinable impairment that can reasonably be expected to produce the

5

symptoms.").) Accordingly, the ALJ did not apply the wrong standard in her denial of social security benefits to Tankersley.

**C.      Tankersley is not disabled under the Medical-Vocational Guidelines.**

Finally, Tankersley appears to argue that he should be considered disabled under the framework of the Medical-Vocational Guidelines due to his alleged illiteracy and light work limitation determination. (DE 13 at 11.) Pursuant to Medical-Vocational Rule 202.09, a finding of "disabled" is directed where the individual is: (1) closely approaching advanced age (ages 50-54); (2) illiterate; (3) limited to light work; and (4) cannot return to unskilled past relevant work. 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.09. Here, Tankersley was 50 years old when the ALJ found him ineligible for social security benefits, (DE 13 at 2) Tankersley *claims* that he is illiterate, (*Id.* at 3, 11) and the ALJ found that Tankersley is limited to light work. (*Id.* at 11.) Tankersley did not elaborate on how he met the fourth element—being unable to return to unskilled past relevant work—but alleges that his illiteracy should cause him to be considered disabled under this test. The Court is not convinced.

Social security regulations consider illiteracy to mean "the inability to read or write." 20 C.F.R. § 404.1564(b)(1). In other words, an individual would be considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists . . . ." *Id.* "Generally, an illiterate person has had little or no formal schooling." *Id.* Defendant correctly points out that the record does not support a finding of illiteracy in Tankersley. Tankersley has completed multiple function reports and questionnaires during the process of applying for social security benefits in which he was able to write numerous simple messages and answers to the listed questions. (DE 9-1 at 288-314.) Further, Tankersley reported to have a seventh-grade education. (*Id.* at 279.) Even if Tankersley's other claims about meeting the Medical-Vocational Guidelines test for disability were true, the record does not support a

6

finding that he is illiterate under the definition found in social security regulations. Accordingly, Tankersley is not disabled under the Medical-Vocational Guidelines.

**D.     The ALJ did not err in determining that Tankersley does not have a severe medically determinable impairment.**

At step two, the claimant—in this case, Tankersley—has the burden of establishing an impairment or combination of impairment that is/are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," an ALJ will find that the claimant does not have a severe impairment and "are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). Age, education, and work experience are not factors in this determination. *Id.* An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability . . . ." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris v. Sec'y of Health and Hum. Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)). Whether an impairment is severe requires the consideration of the combined effects of impairments as well. *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). An ALJ's determination, however, is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Tankersley argues that the ALJ erred when she concluded that Tankersley's impairment or combination of impairments was not severe under social security regulations. (DE 13 at 7-11.) He claims that objective medical evidence, opinion evidence, and other evidence in the record—such as physical exams and imaging, medical opinions from state agency examiners and CE provider Charlotte Thompson, and Tankersley's treatment history and medication regimen—should have established a finding for "severe." (*Id.* at 8-11.) This severe impairment requirement was meant to be a *de minimus* hurdle for plaintiffs, *Higgs*,

880 F.2d at 862, and is typically employed as "an administrative convenience" to screen out groundless claims. *Farris*, 773 F.2d at 90 n.1. After reviewing the record, the Court finds that the ALJ's determination that none of Tankersley's impairments or combination of impairments met the severity requirement in step two of the disability evaluation was not based on substantial evidence.

The ALJ determined that there was no severity by claiming the record lacked evidence of specialist treatment or of objective or clinical evidence to support Tankersley's subjective complaints. (AR at 15.) The ALJ noted that Tankersley reported "a history of chronic pain in his back and legs[,]" while x-rays showed "only mild degenerative changes in the cervical and lumbar spine." (*Id.* at 14.) To discredit Tankersley, she also pointed to contradictory statements that he made in medical appointments and his social security benefits applications regarding his propensity for migraines and seizures. (*Id.*) During the course of Tankersley's efforts to receive social security benefits, his case was reviewed by state agency medical examiners and he was personally evaluated by consultative examiner Charlette Thompson in May 2019. (*Id.* at 14-15.) The ALJ attempts to discredit the state agency's examination and its findings that would support a determination of severe impairment.

After evaluating the record and Tankersley's medical history, the state agency medical examiners found that he had medically determinable impairments. (*Id.* at 122.) These impairments consisted of the following: (1) COPD; (2) osteoarthrosis and allied disorders; (3) epilepsy; (4) migraines; (5) dysfunction of major joints; (6) essential hypertension; (7) depressive, bipolar and related disorders; and (8) anxiety and obsessive-compulsive disorders. (*Id.*) Of those impairments, the state agency medical examiners found that they were *all severe* except for his dysfunction of major joints; depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders. (*Id.*) As a result, the

8

examiners found that Tankersley demonstrated the maximum sustained work capability for light work. (*Id.* at 128.) The ALJ found these determinations "unpersuasive" because the state agency medical examiners "did not examine the claimant[.]" (*Id.* at 15.) The ALJ also found their conclusions "inconsistent with the lack of supporting evidence and ongoing treatment to support[.]" (*Id.*) The Court cannot agree with this reasoning to discredit the state agency's medical opinions.

Defendant argues that whether the state agency medical examiners had a chance to examine Tankersley himself was a "valid factor" for the ALJ to consider. (DE 15 at 9.) This claim, however, misinterprets the regulation that the defendant cites to support the ALJ's determination. Social security regulations state that "[w]hen we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," 20 C.F.R. § 404.1520c(b)(3), the ALJ will consider the examining relationship because "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." *Id.* § 404.1520c(c)(v). Under the plain language of the regulation, this consideration only applies when there are *two or more* medical opinions that are not exactly the same and the ALJ must weigh the persuasiveness of the conflicting opinions. Here, the ALJ does not cite to any conflicting medical opinion when making her determination to find the state agency's medical opinion unpersuasive, nor does she explain how the opinion is inconsistent with evidence from other medical sources. Accordingly, the ALJ erred in using the fact that the state agency medical examiners did not personally evaluate Tankersley to discredit their opinion.

Plaintiff is correct to point out that state agency medical consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Social Security Act[.]" *Gibbens v. Comm'r of Soc. Sec.*, 659 Fed.Appx. 238,

9

247 (6th Cir. 2016). In fact, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating . . . source." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016); *see also Bowman v. Comm'r of Soc. Sec.*, 683 Fed.Appx. 367, 375 (6th Cir. 2017) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). The ALJ cites no contrary medical opinion to rebut the state agency's findings of severe impairments, nor does the ALJ point to specific objective evidence to discount the opinion—merely the "lack" of objective evidence and ongoing treatment. Given the severity requirement was typically meant as an "administrative convenience" to root out totally groundless claims, *Farris*, 773 F.2d at 90 n.1, the Court declines to label Tankersley's case as totally groundless without countervailing evidence to rebut the state agency's medical opinion. Accordingly, the Court finds that the ALJ lacked substantial evidence to support her determination that Tankersley did not suffer from a severe impairment and erred at stopping her analysis at step two of the disability evaluation.

**II.    Conclusion**

For all these reasons, the Court **HEREBY ORDERS** that:

1. The plaintiff's motion for summary judgment (DE 13) is GRANTED;

2. The defendant's motion for summary judgment (DE 15) is DENIED;

3. The decision of the Commissioner is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) as it was not supported by substantial evidence; and

4. A judgment will be entered contemporaneously with this order.

This 12th day of September, 2023.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY